ORITO, Plaintiff in error, v. STATE, Defendant in error.

*No. State 205.  Argued May 4, 1972.—Decided June 6, 1972.*
(Also reported in 197 N. W. 2d 763.)

162

For the plaintiff in error there was a brief by *Samson, Friebert, Sutton & Finerty* and *Robert E. Sutton,* all of Milwaukee, and oral argument by *Robert E. Sutton.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The following issues are presented on this appeal:

(1) Is the magazine constitutionally protected as a matter of law;

(2) Was the evidence sufficient to prove scienter beyond a reasonable doubt;

(3) Did the trial court err in admitting evidence concerning the nature of the premises at which the magazine was sold; and

(4) Were instructions relating to pandering proper?

*Nonobscenity as a matter of law.*

Defendant asks this court to find the magazine not obscene as a matter of law. This court has adopted the test for obscenity first enunciated in *Roth v. United States* (1957), 354 U. S. 476, 489, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498, and amplified in *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1. *Court v. State* (1971), 51 Wis. 2d 683, 692,

188 N. W. 2d 475. As stated in *Court,* at page 691, the following must be established in order to find a publication obscene:

" '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' "

Defendant contends that since courts in other jurisdictions have found magazines allegedly similar to the publication in the instant case to be constitutionally protected under the above test, this magazine should be held not obscene as a matter of law. This same argument was presented in the *Court Case* and was rejected as calling for an inappropriate yardstick. As stated in *Court,* at page 690:

". . . The subjective nature of the material as well as the subjective conduct of the respective defendants requires an individual analysis in each case. . . ."

Since reasonable men might well differ in their conclusions as to whether or not *Riviera Girls* is obscene, the question became one of fact for the jury. This court will sustain the findings of the jury when they are supported by substantial credible evidence, considering the record as a whole. *State v. I, A Woman—Part II* (1971), 53 Wis. 2d 102, 110, 191 N. W. 2d 897. The record herein, containing the magazine itself and evidence as to the manner in which it was sold, clearly supports the verdict of the jury. We cannot say, as a matter of law, the material is not obscene.

*Evidence as to scienter.*

Defendant contends that insufficient evidence was adduced at trial to prove the element of scienter. The

United States Supreme Court has held that proof of scienter is required in cases such as this to avoid the hazards of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity. *Mishkin v. New York* (1966), 383 U. S. 502, 511, 86 Sup. Ct. 958, 16 L. Ed. 2d 56. However, the state is not required to prove that the defendant knew the publication was obscene; it need only show that defendant knew the nature of the material. *Court v. State, supra,* at page 701. The circumstances surrounding the sale of an allegedly obscene book may warrant the inference that the bookseller knew of its contents. *Smith v. California* (1959), 361 U. S. 147, 154, 80 Sup. Ct. 215, 4 L. Ed. 2d 205.

Although the evidence showing scienter in the instant case is primarily circumstantial, it is sufficient to support defendant's conviction. Defendant admitted being the lessee of the premises. He had been seen in the store a number of times; and on at least two occasions was seen at a nearby restaurant counting quarters he had taken from the "peep show machines" inside his store. At one of these times he stated that "business was good." The windows of the store were painted so as to prevent passersby from being able to look inside; and a number of representative magazines, with certain portions of the cover photos blocked from view, were displayed in the window. A sign limited access to the store to adults only. The magazine *Riviera Girls* was displayed on an open rack, as were other, apparently similar, magazines; and its cover clearly depicts the nature of the pictures on the inside pages. The price for this magazine was $3.50, which is obviously exorbitant for the 22-page publication. We think this evidence is ample to support the jury's finding that defendant "knowingly" possessed the magazine for sale.

*Evidence as to pandering.*

Defendant asserts that the trial court erred in admitting evidence relating to other publications on the premises and the manner in which they were sold. He contends that this evidence is not encompassed by the term "pandering" as used in *Ginzburg v. United States* (1966), 383 U. S. 463, 86 Sup. Ct. 942, 16 L. Ed. 2d 31, rehearing denied, 384 U. S. 934, 86 Sup. Ct. 1440, 16 L. Ed. 2d 536. We think that such evidence was properly received. The setting in which the publications are presented may be considered in determining the question of obscenity. *Ginzburg, supra,* at page 466. It would be unreasonable to assume that the "pandering" discussed in *Ginzburg* included only active solicitation through mail or newspaper advertising. Rather, the appearance of the exterior of the store, the presence of signs and the method in which the material is displayed can also fall within the meaning of pandering. Furthermore, as noted above, such evidence could properly be considered by the jury in determining the question of scienter. The evidence was properly admitted.

*Instruction relating to pandering.*

Defendant finally contends that the trial court should not have given an instruction relating to pandering, asserting that there was no evidence of pandering in the sense used in *Ginzburg*. As stated above, however, the term "pandering" should be interpreted as including more than active solicitation. The trial court instructed that evidence relating to pandering could be considered by the jury to determine the question of obscenity. This instruction was proper.

Defendant asserts that the instruction was not appropriate inasmuch as defendant was not charged with

pandering. We see no merit in this contention. The complaint sets forth the essential facts which constitute the crime charged. Defendant is not entitled to a listing of every evidentiary fact on which the state will rely at trial. *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 229, 161 N. W. 2d 369.

We conclude that the evidence supports defendant's conviction and that no prejudicial error occurred at trial.

*By the Court.*—Judgment and order affirmed.

WILKIE, J. *(concurring)*. In my concurring opinion in *Court,*[1] I stated that:

"The determination of whether a particular publication is obscene is a mixed question of fact and constitutional law on which an appellate court is obliged to make an independent determination. We cannot escape this responsibility here."

In my opinion this court must independently review the materials involved in this case to determine whether or not they are obscene. This is a matter of federal constitutional law governed by the decisions of the Supreme Court of the United States. That court in *Jacobellis v. Ohio,*[2] and this term in *Rabe v. Washington,*[3] has made clear that an independent determination of obscenity must be made by the reviewing appellate court.

Applying the threefold test stated in *Court* and reiterated in the majority opinion here, I have no hesitation, after making an independent determination, in concluding that the publication here is obscene and that the conviction should therefore be affirmed. This magazine has no other purpose than to sexually arouse the

---

[1] *Court v. State* (1971), 51 Wis. 2d 683, 711, 188 N. W. 2d 475.

[2] (1964), 378 U. S. 184, 84 Sup. Ct. 1676, 12 L. Ed. 2d 793.

[3] (1972), 405 U. S. 313, 92 Sup. Ct. 993, 31 L. Ed. 2d 258.

reader; it manifestly appeals to such a person's prurient interest in sex.

The magazine in question consists only of a series of photographs of women standing, sitting, or lying, entirely or mostly unclad, and in gross positions where there is no question but their appeal is solely to the prurient interests of the reader. There is no attempt at art, literature, or social comment. These photographs are totally without social redeeming value and offend the community standards whether considered locally or nationally.

Since this magazine is obscene it is not entitled to the protection of the federal constitution. If any error took place in the trial court it is obviated by my independent review of the materials in question.